IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Ester M. Davis, | ) | Civil Action No.: 8:11-cv-02223-CMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

1

<u>**PROCEDURAL HISTORY**</u>

In October 2009, Plaintiff filed an application for DIB and SSI, alleging an onset of disability date of June 26, 2009. [R. 123–34.] Both applications were denied initially [R. 41–44, 51–60] and on reconsideration by the Social Security Administration ("the Administration") [R. 45–48, 63–66]. On June 28, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 67–71 ], and on December 20, 2010, ALJ Regina L. Warren conducted a de novo video hearing on Plaintiff's claims.[3] [R. 21–40.]

The ALJ issued a decision on February 25, 2011 finding Plaintiff not disabled. [R. 9–20.] At Step 1,[4] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through September 30, 2014 and had not engaged in substantial gainful activity since June 26, 2009, the alleged onset date. [R. 11, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had severe impairments of acute pulmonary heart disease and obstructive lung disease but found Plaintiff's hypertension and depression were non-severe. [R. 11–12, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 13, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ made the following findings as to Plaintiff's residual functional capacity ("RFC"):

> [T]he undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, [Plaintiff] can lift and

---

[3]Plaintiff appeared in at the remote video hearing site in North Myrtle Beach, South Carolina, and the ALJ presided over the hearing from North Charleston, South Carolina. [Doc. 20 at 2.]

[4] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour work day. However, [Plaintiff] can only occasionally climb stairs and she must never climb ladders. She can occasionally balance, stoop, kneel, crouch and crawl. Additionally, she must avoid extreme hot and cold weather, fumes, odors, dusts, gases and poor ventilation. She should have no exposure to hazardous machinery or heights.

[R. 13–14, Finding 5.] Then, at Step 4, the ALJ found Plaintiff was unable to perform any past relevant work. [R. 18, Finding 6.] At Step 5, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy Plaintiff could perform. [R. 19, Finding 10.] As a result, the ALJ concluded Plaintiff had not been under a disability as defined by the Act from June 26, 2009 through the date of the ALJ's decision. [R. 19, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 5], but the Council declined review [R. 1–4]. Plaintiff filed this action for judicial review on August 22, 2011. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ

1.   improperly rejected the opinion of treating physician Jeniqua Duncan, D.O., by failing to explain the basis for the rejection [Doc. 20 at 17–33; Doc. 23 at 2–7];

2.   made inadequate findings regarding Plaintiff's cognitive impairments [Doc. 20 at 33–34]; and

3.   failed to fully and fairly develop the record [*id.* at 34–35; Doc. 23 at 7–13].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence, specifically arguing the ALJ

1.      properly rejected Dr. Duncan's opinion because her treatment notes did not reflect the performance of any clinical or diagnostic tests, and her notes failed to contain any limitations or restrictions [Doc. 22 at 7–9];

2.      correctly assessed Plaintiff's credibility [*id.* at 9–12]; and

3.      was not required to order a consultative psychological examination to adequately develop the record [*id.* at 12].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial

evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence

or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of*

*Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step

five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the

national economy that the claimant can perform, considering the claimant's age, education,

and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can

find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§

404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant

physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for

pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an

individual has earnings from employment or self-employment above a specific level set out

in the regulations, he is generally presumed to be able to engage in substantial gainful

activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform

basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a

claimant's physical and mental impairments are sufficiently severe, the ALJ must consider

the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B),

1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not

in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889

F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of

impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.** ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6] 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.** ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. §§ 404.1545(e), 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a; 416.969a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

[Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.      Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the

ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes

both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and

West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:

...

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Weight of Treating Physician's Opinion**

Plaintiff has a history of hypertension and suffered cardiac arrest on June 26, 2009 while talking to her daughter after eating dinner. [R. 210.] In December 2010, Jeniqua Duncan, D.O., completed an RFC assessment on Plaintiff's behalf indicating Plaintiff had certain functional limitations as a result of her health problems. [R. 518–22.] Plaintiff contends the ALJ failed to properly assess the opinion of Dr. Duncan by rejecting, without explanation, Dr. Duncan's assessment regarding Plaintiff's standing/walking limitations, the need to elevate her legs, frequent interference with attention/concentration, and her need for unscheduled breaks. [Doc. 20 at 20.] The Commissioner contends Dr. Duncan's opinion was inconsistent with the evidence of record, including her own treatment notes and the opinion of Dr. William Cain.[9] [Doc. 22 at 8.] Further, the Commissioner contends

---

[9]Dr. Cain is a state agency physician who reviewed Plaintiff's records and completed a physical RFC assessment of Plaintiff in June 2010. [R. 455–62.]

the ALJ properly evaluated Dr. Duncan's opinion in accordance with the factors set forth in the regulations and agency rulings for evaluating opinion evidence because the ALJ "stated that she considered the entire record, and twice stated that she considered opinion evidence in accordance with agency regulations and rulings," and the "Court should take the ALJ at her word that she evaluated Dr. Duncan's opinion in accordance with appropriate regulations and rulings." [*Id.*]

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527); *see* 20 C.F.R. § 416.927(c). While the ALJ is not required to expressly discuss each factor, "the ALJ must at least indicate that he or she was aware of and considered all of the factors." *Baxter v. Astrue*, No. 10-3048, 2012 WL 32567, at *6–7 (D. Md. Jan. 4, 2012).

Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Additionally, Social Security Ruling 96-2p

requires an ALJ to give specific reasons for the weight assigned to a treating physician's medical opinion. SSR 96-2p, 61 Fed. Reg. 34,490-01 (July 2, 1996). As stated in the ruling,

> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and *must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.* In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at 34,491 (emphasis added). An ALJ's failure to explain the weight given to a treating physician opinion is ground for remand because, without sufficient explanation, the reviewing court cannot determine whether substantial evidence supports the ALJ's decision. *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) (stating an ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed unless the ALJ "has not given good reason for the weight afforded to a particular opinion" or "dredged up 'specious inconsistencies'"); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) (reversing and remanding due to the ALJ's failure to explain why he disregarded the treating physicians' opinions).

### Dr. Duncan's Opinion

Dr. Duncan completed a Residual Functional Capacity Questionaire indicating that she had treated Plaintiff since December 2005 and had seen her every three to six months. [R. 518.] Dr. Duncan indicated Plaintiff had been diagnosed with hypertension and sick

sinus syndrome, had a pace maker, and required long term anticoagulant management.

[*Id.*] Dr. Duncan indicated Plaintiff had a normal physical examination, including a

neurologic examination. [*Id.*] Dr. Duncan did not identify any psychological conditions

affecting Plaintiff's physical condition, but she did indicate that Plaintiff's experience of pain

or other symptoms was severe enough to frequently interfere with attention and

concentration. [R. 519.] Dr. Duncan opined Plaintiff could tolerate a low stress job. [*Id.*]

With respect to physical limitations, Dr. Duncan opined Plaintiff

* could walk two city blocks without rest or severe pain;
* could continuously sit more than two hours and stand 30 minutes a day;
* could sit at least six hours total and stand/walk about two hours total in an eight-hour work day;
* must walk every 90 minutes, ten minutes each time, in an eight-hour work day;
* needs to be able to shift from sitting, standing, or walking at will;
* would need at least one unscheduled break a day, resting about fifteen minutes before returning to work;
* would need to elevate her legs 45 to 90 degrees with prolonged sitting for greater than 90% of an eight-hour work day.

[R. 520–21.] Dr. Duncan further limited Plaintiff to only occasionally lifting and carrying 20

to 50 pounds and frequently lifting ten pounds or less. [R. 521.] Finally, Dr. Duncan

opined Plaintiff could stoop and crouch 50% of an eight-hour work day, would miss work

one day a month as a result of her impairments or treatment, and should avoid heights.

[R. 522.]

### State Agency Physicians' Opinions

In June 2010, Dr. Cain completed a physical RFC assessment, indicating Plaintiff

could occasionally lift/carry twenty pounds; frequently lift/carry ten pounds; stand/walk for

a total of about six hours in an eight-hour day; occasionally climb ramp/stairs but never

ladder/rope/scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and should

avoid concentrated exposure to extreme cold and heat, fumes, odors, dust, gases, poor ventilation, and hazards such as machinery and heights. [R. 455–62.] Dr. Cain noted Plaintiff's claims of difficulty lifting, squatting, standing, walking, kneeling, and climbing stairs were only partially credible. [R. 460.]

In February 2010, Dr. Michael Neboschick completed a psychiatric review technique form and found there was insufficient evidence to determine the effects of Plaintiff's alleged concentration problems. [R. 392–404.] Specifically, Dr. Neboschick indicated he was not certain Plaintiff's problems concentrating were secondary to a discrete mental impairment or medication side effects, and there was insufficient evidence for Dr. Neboschick to make a determination because he was unable to contact Plaintiff and Plaintiff failed to return the function report. [R. 404.] A subsequent psychiatric review technique conducted by Dr. Lisa Clausen in June 2010 found Plaintiff had no medically determinable impairment. [R. 441–53.] Dr. Clausen indicated Plaintiff's alleged symptoms of difficulty with memory, completing tasks, concentration, understanding, and following instructions were not credible. [R. 453.] Further, Dr. Clausen noted Plaintiff's mental status was within normal limits on examination, there was no evidence of any psychological implications in the medical evidence of record, and her concentration, mood, affect, and general thought processes were within normal limits in April 2010. [*Id.*]

### Weight Assigned to the Medical Opinions by the ALJ

After summarizing Dr. Duncan's December 2010 opinion, the ALJ stated

> The undersigned accords this opinion some weight, as certain aspects of the opinion are in fact consistent with the residual functional capacity determined in this decision. The opinion is also generally consistent with the claimant's presentation upon routine examination.

21

> Significant weight is given to opinions of the state agency medical and psychological consultants as they are generally supported by the other evidence of record; however, the undersigned notes the claimant is slightly more limited than the state agency psychological consultants determined.

[R. 18.]

### *Analysis*

As previously stated, the opinion of a treating physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Craig*, 76 F.3d at 589. If, however, the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2)–(6). Further, SSR 96-2p requires the ALJ to give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 61 Fed. Reg. at 34,491. The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Here, the ALJ credited Dr. Duncan's opinion to the extent it was consistent with the ALJ's determination that Plaintiff could perform light work, with some restrictions, but discredited Dr. Duncan's opinion that Plaintiff required more restrictive standing/walking limitations, the opportunity to elevate her legs, limitations on concentration and attention, and unscheduled breaks. [*See* R. 13–14, Finding 5 (stating Plaintiff retained the RFC to lift and carry up to twenty pounds occasionally and ten pounds frequently and stand, walk,

and sit for six hours each in an eight-hour work day; could only occasionally climb stairs; must never climb ladders; could occasionally balance, stoop, kneel, crouch, and crawl; must avoid extreme hot and cold weather, fumes, odors, dust, gases, and poor ventilation).] It is unclear exactly what evidence the ALJ relied on in rejecting the additional restrictions from Dr. Duncan's opinion, which were also supported by Plaintiff's testimony; e.g., it is unclear whether the ALJ relied on her own credibility findings or relied on Drs. Cain and Clausen's statements regarding Plaintiff's lack of credibility with respect to her complaints of difficulty lifting, squatting, standing, walking, kneeling, and climbing stairs [R. 460] and difficulty with memory, completing tasks, concentration, understanding, and following instructions [R. 453]. Moreover, because the ALJ did not give the opinion by Dr. Duncan controlling weight, the ALJ was required to consider each of the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in evaluating Dr. Duncan's opinion and to give specific reasons for discounting the opinion. SSR 96-2p, 61 Fed. Reg. at 34,491. The ALJ failed to do so.[10] Therefore, the Court cannot determine if the ALJ's decision is supported by substantial evidence and recommends the case be remanded for clarification on this point.[11]

---

[10] By the Commissioner setting forth the reasons for discounting Dr. Duncan's opinion, the Commissioner is engaging in a post hoc rationalization which the Court cannot consider. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915–16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

[11] Whether the ALJ's decision to discredit Dr. Duncan's additional limitations is supported by substantial evidence is crucial to determining whether the ALJ's decision that there is other work Plaintiff can perform is supported by substantial evidence. On examination by the ALJ, the vocational expert testified that a person of Plaintiff's age, education, and work experience who is able to perform light work with normal breaks and with the RFC found by the ALJ, but who was required to elevate her legs at least two to three hours during an eight-hour day—and, as a result, would possibly be off task for at least one-third of the time—or who would

**Consultative Examination**

Plaintiff argues the ALJ made inadequate findings regarding Plaintiff's alleged cognitive impairments and failed to fully develop the administrative record. [Doc. 20 at 33–35; Doc. 23 at 7–13.] Plaintiff contends she may have suffered some type of brain injury during the period of time between onset of cardiac arrest and defibrulation. [Doc. 20 at 33.] Plaintiff argues that tests should have been conducted and/or Plaintiff should have been evaluated by a mental health professional for possible cognitive defects. [*Id.* at 33-34.]

The Court first notes Plaintiff was represented by counsel at her hearing before the ALJ and that the duty to introduce evidence of any such impairment was Plaintiff's duty, not the ALJ's. *See Pass*, 65 F.3d at 1203 (noting the claimant bears the burden of production and proof through the first four steps of the sequential analysis); see also Bell

---

require unscheduled breaks, would not be able to perform jobs as they exist in the national economy. [R. 38.]

Further, the Court notes the ALJ also appears to draw negative inference with respect to Plaintiff's complaints regarding her symptoms based on her failure to follow treatment prescribed by doctors and her cancelling or failing to show up for doctor's appointments on a number of occasions. [R. 16–17.] The ALJ cited treatment notes from St. James-Santee Family Health Center indicating a lack of finances to pay the co-pay; however, the ALJ found that the evidence of record did not show Plaintiff ever attempted to avail herself of no cost to low cost treatment providers within the community. [R. 17.] The ALJ also noted Plaintiff was advised that she could return for treatment even if she could not afford the co-pay. [*Id.*; *see* R. 497.] The ALJ stated that a claimant's failure to follow prescribed treatment without good reason was grounds to find the claimant not disabled. [R. 17.] Contrary to the ALJ's finding, however, it is the Court's understanding that St. James-Santee is a low cost Federal Qualified Health Center established to serve the needs of the underserved and underinsured. *See* http://www.stjamessanteefhc.com (last visited November 6, 2012). The center offers a sliding-fee discount program for eligible low-income families; however, even if a patient qualifies for the sliding fee, the patient is requested to bring a minimum of $25.00 to each visit. *Id.* at New Patients page.

The Fourth Circuit has stated that "[a] claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)). Therefore, to the extent the ALJ on remand continues to consider Plaintiff's failure to pursue medical treatment as evidence weighing against her credibility, the Court directs the ALJ to make specific factual findings concerning what resources were available to Plaintiff and whether her alleged inability to pay for treatment, diagnostic studies, and prescription medications contributed to her failure to seek medical treatment for her various impairments.

v. Chater, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. 1995) (unpublished table decision) ("Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, [he] is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." (alteration in original) (internal quotation marks omitted) (quoting *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir.1994); *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir.1986))).

Second, the Court notes a consultative examination may be purchased "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow . . . a determination or decision on [the] claim."  20 C.F.R. §§ 404.1519a(b), 416.919a(b).  The decision to order a consultative examination, however, is within the discretion of the ALJ.  *See Singleton v. Barnhart*, 399 F. Supp. 2d 686, 690 (D.S.C. 2005); *Bishop v. Barnhart*, 78 F. App'x. 265, 268 (4th Cir. 2003) (unpublished decision).

Third, the claimant must point to some record evidence suggesting the existence of a condition that could have a material impact on the disability decision before the ALJ is charged with a duty to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists" before it "becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment."); *see also Elbert v. Barnhart*, 335 F. Supp. 2d 892, 905–06 (E.D. Wis. 2004) (holding an ALJ may reasonably decline to obtain a consultative mental examination when there is

insufficient evidence to indicate a possibility that a severe mental impairment exists). In matters involving a mental impairment, 42 U.S.C. § 421(h) provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security had made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

In this case, neither Plaintiff nor her counsel raised the possibility of mental impairment resulting from oxygen deprivation as a result of cardiac arrest, as now suggested by Plaintiff, and Plaintiff has failed to produce sufficient evidence to indicate that a severe mental impairment might exist. The record reveals the ALJ considered the opinion of Dr. Clausen [*see* R. 18], who completed a psychiatric review technique form and found (1) Plaintiff's alleged symptoms of difficulty with memory, completing tasks, concentration, understanding, and following instructions not credible and (2) no evidence of psychological impairment in memory, concentration, mood, affect, or general thought process [R. 453]. Moreover, the ALJ considered Plaintiff's mental impairments under Listings 12.00 and 12.04 and considered Plaintiff's ability to function socially, as well as her concentration, persistence, and pace. [R. 12–13.] The ALJ found only mild limitations in concentration, persistence and pace, and no limitations in social functioning and activities of daily living; thus, the ALJ found Plaintiff's mental impairment to be nonsevere. [R. 12.] On the basis of the evidence in the record, the Court finds the ALJ did not err in declining to order a psychological consultative examination.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

November 6, 2012
Greenville, South Carolina